**SIGNED this 22 day of October, 2025.**



_____
John T. Laney, III
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| SHARRMAINE V'NELL LUCILLE CURTIS, | ) | CHAPTER 13 BANKRUPTCY |
| | ) | |
| Debtor. | ) | CASE NO. 24-40459-JTL |
| | ) | |

## MEMORANDUM OPINION ON MOTION TO VALIDATE FORECLOSURE SALE

Before the Court is the Motion to Validate Foreclosure Sale [Doc. 28] (the "Motion") filed by Wells Fargo Bank, N.A. ("Wells Fargo"). At issue is Wells Fargo's foreclosure sale of real property located at 5038 Buena Vista Road, Columbus, Georgia (the "Property"). The foreclosure sale occurred August 6, 2024, one day after this case was filed. Wells Fargo now seeks an order validating the foreclosure sale. The Court held a hearing on the Motion on September 5, 2025, at

1

2:00 PM. At the hearing, Daniel Wilder appeared on behalf of Wells Fargo, Brace Luquire appeared on behalf of the Debtor, and the Debtor appeared in person and testified. The Chapter 13 Trustee was also in attendance.

At the close of evidence, the Court took the matter under advisement. Based on the pleadings, evidence presented, arguments of the parties, and the case record, the Court now grants the Motion for the reasons explained below.

**I.    Jurisdiction**

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the U.S. District Court for the Middle District of Georgia's Amended Standing Order of Reference, General Order 2012-1 (Feb. 21, 2012). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

**II.    Findings of Fact**

Billy R. Weary (the Debtor's father) owned the Property until his death in October 2016. In December 2006, he borrowed money from Wells Fargo's predecessor in interest and executed a security deed granting an interest in the Property to secure repayment. This was the security deed Wells Fargo would eventually foreclose on in August 2024.

Mr. Weary passed away intestate and with five surviving children, including the Debtor. His probate estate was opened sometime in 2017 and remains open and under administration. The probate court appointed Thomas Tebeau, an attorney, as the administrator for the probate estate.

On October 28, 2022, the Debtor filed the first of two Chapter 13 cases in this Court, Case No. 22-40495. She was represented by counsel throughout the case. In her bankruptcy documents, the Debtor claimed the Property as her residence,[1] scheduled Wells Fargo as a creditor secured by

---

[1] The Debtor asserted an interest in the Property in her Schedule A/B, with a note stating "five heirs."

2

the Property and proposed to cure arrears on the underlying loan through her Chapter 13 plan. Wells Fargo did not object to being treated in the plan but rather filed a proof of claim asserting an arrearage amount of $8,229.22 and a total debt of $106,855.31. The Debtor's plan was confirmed but the case was eventually dismissed for lack of plan payments on April 9, 2024. The Chapter 13 Trustee's Final Report & Account states the Debtor made $23,802.09 in plan payments, of which Wells Fargo received $1,308.86 towards the arrearage claim and $16,673.85 in regular monthly payments.

After dismissal, Wells Fargo began the foreclosure process and mailed out statutory foreclosure notices. At the September 5 hearing, Wells Fargo introduced copies of this correspondence. Two letters were mailed to the Property, one addressed to "The Representative of the Estate of Billy R Weary" and the other addressed to "Billy R Weary." Both letters were returned to sender as "unclaimed" and "unable to forward." A third letter was mailed to a P.O. Box in Columbus, Georgia, and addressed to "Billy R Weary." A U.S.P.S. return receipt for this letter shows it was picked up and signed for by Thomas Tebeau.

The foreclosure was scheduled to occur August 6, 2024. At around 4:00 PM on August 5, 2024, the Debtor filed the Chapter 13 case currently before the Court. The Debtor filed a "skeleton" Chapter 13 petition—a petition filed without the schedules, statements, and plan required by the Bankruptcy Code and Federal Rule of Bankruptcy Procedure. She failed to correct her numerous filing deficiencies, resulting in case dismissal on August 29, 2024.

The petition was not filed through an attorney but rather by the Debtor herself. At the hearing, the Debtor testified she engaged the services of a petition preparer in Atlanta who held herself out as an attorney. When cross-examined about why she filed nothing else after the petition,

the Debtor testified she did not know she had anything else to file, because the petition preparer did not say she had to file anything else.

The Debtor admitted at the hearing she took no action to notify Wells Fargo of her bankruptcy filing. Wells Fargo, therefore, conducted the foreclosure sale of the Property on August 6 as scheduled. Wells Fargo was itself the high bidder and purchaser of the Property at the foreclosure sale. The Deed Under Power transferring the Property to Wells Fargo states a winning bid and sale amount of $75,459.00. The deed was executed August 26, 2024, and recorded September 5, 2024.

Wells Fargo thereafter transferred the Property to The Villa Homes Holding Company Incorporated ("Villa Homes") via a Limited Warranty Deed executed October 31, 2024, and recorded November 21, 2024. The deed states the sale was for $50,100.00.

Soon after this sale, Villa Homes took possession of the Property, changed the locks, and refused the Debtor entry. At the hearing, the Debtor testified she did not know about the foreclosure sale or the transfer to Villa Homes until she came home one day to find that Villa Homes had changed the locks. She further testified she was not aware her bankruptcy case had been dismissed until after these events.

This bankruptcy case remained closed and dormant for many months despite the foregoing. The post-petition foreclosure was not brought to the Court's attention until May 2025. *See* Motion to Reopen Chapter 13 Bankruptcy Case for the Purpose of Validating Foreclosure Sale [Doc. 24]. The Court reopened the case on June 16, 2025, and Wells Fargo filed the Motion on July 17, 2025.

### III. Conclusions of Law

#### A. Authority for Annulling the Stay

4

The Bankruptcy Code authorizes bankruptcy courts to annul the automatic stay, granting retroactive relief to validate an act that otherwise would violate the stay. *See* 11 U.S.C. § 362(d) (authorizing relief such as "terminating, annulling, modifying, or conditioning" the automatic stay); *In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir. 1984) (holding that "annulling" in § 362(d) "contemplates the power of bankruptcy courts to grant relief from the stay which has retroactive effect").

"Neither the Eleventh Circuit nor other circuit court opinions offer a specific test to analyze whether annulment is appropriate in any given case." *In re Evans*, 665 B.R. 670, 680 (Bankr. N.D. Ga. 2024) (Cavender, B.J.). While no binding authority has set forth any specific test, the Eleventh Circuit court of appeals has cautioned that the authority to grant retroactive stay relief should be exercised "in appropriately *limited* circumstances." *In re Albany Partners, Ltd.*, 749 F.2d at 675.

Case law offers guidance on the issue before the Court. In determining whether to retroactively lift the stay, courts typically focus on two points: (1) whether the creditor had notice of the bankruptcy and (2) the debtor's conduct. *See, e.g.*, *In re Howard*, 391 B.R. 511, 518 (Bankr. N.D. Ga. 2008) (Bonapfel, B.J.) (noting courts "focus, to a large degree, on two considerations: whether a creditor had notice of the pending bankruptcy (i.e., was the creditor's conduct innocent or did it knowingly violate the stay) and whether the debtor has engaged in inequitable conduct"). While these two points are important, they are not determinative. *See, e.g.*, *In re 1278 Vill. Run Tr.*, 577 B.R. 830, 832 (Bankr. N.D. Ga. 2017) (Baisier, B.J.) (stating these two points are "[i]mportant to that examination, but not by themselves determinative"); *In re Evans*, 665 B.R. 670, 680 (Bankr. N.D. Ga. 2024) ("Although courts often focus on two factors … courts do not consider those factors dispositive or exhaustive.").

Rather, each request for retroactive stay relief is *sui generis* and requires a factually intensive inquiry. *See, e.g.*, *In re 1278 Vill. Run Tr.*, 577 B.R. 830 at 832 (citing *In re Howard*, 391 B.R. 511 (Bankr. N.D. Ga. 2008), and *In re Cruz*, 516 B.R. 594 (9th Cir. BAP 2014)). To that end, "Courts tend to look at many factors as to whether the automatic stay should be annulled." *In re Kelley*, 652 B.R. 570, 571 (Bankr. M.D. Ga. 2023) (Laney, B.J.). *See also, e.g.*, *In re Fjeldsted*, 293 B.R. 12, 25 (B.A.P. 9th Cir. 2003) (12 factors); *In re Evans*, 665 B.R. 670, 680–81 (Bankr. N.D. Ga. 2024) (same); *In re Stockwell*, 262 B.R. 275, 281 (Bankr. D. Vt. 2001) (7 factors); *In re Morozov*, 671 B.R. 326 (M.D. Fla. 2025) (5 factors); *In re Long*, No. 24-71004, 2025 WL 1596785, at *6 n.3 (Bankr. C.D. Ill. June 5, 2025) (17 factors). These factors are non-exclusive and "merely present a framework for analysis." *In re Evans*, 665 B.R. at 681. Moreover, "[i]n any given case, one factor may so outweigh the others as to be dispositive." *Id.* (brackets in original) (quoting *In re Cruz*, 516 B.R. at 603–04).

### B. Factors Weighing for and Against Annulment in this Case

The Court has reviewed and considered the numerous factors found in the case law on retroactive stay relief. The Court finds them a useful framework for analysis and will discuss the factors the Court considers most relevant.

Several factors weigh either in the Debtor's favor or against Wells Fargo. The Court finds no subjective bad faith in the Debtor's actions. She appears to have been motivated by a genuine desire to make the payments necessary to avoid foreclosure. This is exemplified by her good faith efforts in her first bankruptcy case, where the Debtor obtained confirmation of, and made substantial progress in, a Chapter 13 plan providing for cure and ongoing payments to Wells Fargo. And the Court found the Debtor's testimony credible regarding the petition preparer in Atlanta that did little other than misrepresent her legal and bankruptcy credentials and take the Debtor's money.

6

Weighing against Wells Fargo are issues of notice and delay. Wells Fargo asserts it "did not become aware of the bankruptcy filing until months after the foreclosure sale was conducted." Motion ¶ 9. But Wells Fargo submitted no evidence on when or how it became aware of the filing. The Court assumes Wells Fargo lacked notice of the filing as of the August 6 foreclosure sale considering the Debtor's admitted failure to provide notice. That failure notwithstanding, the Court mailed its own notice of the bankruptcy filing on August 8, 2024. *See* Certificate of Notice [Doc. 9]. This notice was sent via first-class mail addressed to Wells Fargo at P.O. Box 14468, Des Moines, Iowa, which was the address provided by the Debtor. Wells Fargo would have received notice, and thus was or should have been aware of the bankruptcy case, before it executed the Deed Under Power on August 26, 2024, and before it executed the Limited Warranty Deed on October 31, 2024. With no evidence to the contrary regarding notice and the cause for delay, these issues weigh against granting the relief requested.

However, several other factors weigh so heavily against the Debtor and in favor of Wells Fargo that the Court will grant the Motion. Weighing heaviest is the factor that examines whether the Debtor has complied with, or is complying with, the Bankruptcy Code and Bankruptcy Rules. The glaring point here is the Debtor's utter failure to comply with fundamental bankruptcy requirements or to prosecute this case in any meaningful manner. This case was filed on the eve of foreclosure with a bare petition and no filing fee being paid. Thereafter, the Debtor did essentially nothing else, resulting in a prompt dismissal for lack of documents. She did not even receive the required pre-bankruptcy credit counseling allowing her to be eligible for bankruptcy in the first place.[2] The Debtor remains in default of her filing fee obligation, as the entire case filing

---

[2] The Debtor eventually filed a certificate of credit counseling [Doc. 17], but the certificate shows that counseling was completed a week after the case was filed. The Bankruptcy Code requires that credit counseling be completed before filing a bankruptcy case. *See* 11 U.S.C. § 109(h)(1) (stating "an individual

7

fee is still outstanding. The Clerk's Office sent the debtor notice on the day after the case was filed listing filing requirements she needed to complete within fourteen days, and she completed none of them. She only obtained credit counseling post-petition and filed that certificate. The Debtor's experience of filing her 2022 case should have given her notice of what more needed to be done.

The Court acknowledges that the Debtor attributes some of these failures to her reliance on an individual in Atlanta who turned out to be a bad actor. The Court sympathizes with her position. But that reliance cannot erase the fact that the Debtor filed a bare Chapter 13 petition to stop a foreclosure and did essentially nothing else thereafter, and ignored this case so thoroughly she did not know about the dismissal until after October 2024.

Also weighing against the Debtor are the factors examining the value to the estate of the property at issue and its necessity for an effective reorganization. This case is dismissed and has been for a long time. There is no estate and there will be no reorganization. Granting the Motion would harm no estate or ongoing reorganization; denying it would benefit only the Debtor personally.

Finally, the probate backdrop presents unique factors that weigh heavily in favor of granting the Motion. As noted above, Mr. Weary's probate estate remains open and is being administered by a court-appointed administrator. "[U]nder Georgia law, the appointment of an administrator divests the heirs of their ownership interests directly in the Property." *In re Holyfield*, No. 16-67309, 2019 WL 2387045, at *3 (Bankr. N.D. Ga. June 3, 2019) (citing O.C.G.A. § 53-2-7(c)[3]). The Debtor, therefore, did not own the Property or have any direct interest in the Property

---

may not be a debtor" unless the individual receives credit counseling "during the 180-day period ending on the date of filing of the petition").

[3] "Upon the appointment of an administrator, the title to any interest in real property which survives the intestate decedent shall vest in the administrator for the benefit of the heirs and creditors of the decedent, and title to such property shall not revest in the heirs until the administrator assents to such revesting." O.C.G.A. § 53-2-7(c).

8

itself when she filed this case. Rather, she had an indirect interest, by virtue of her one-fifth interest in Mr. Weary's probate estate. It was this one-fifth interest in the probate estate—rather than the Property itself—that entered the Debtor's bankruptcy estate on August 5, 2024.

The above points raise concerns the Court factors into its decision to grant the Motion. The concerns relate to the nature of the property at issue and consequences of a decision not to annul the stay. Typically, when courts determine whether to annul the stay as to a post-petition foreclosure, the debtor's direct or title ownership is at stake. But here, the Debtor's interest in the Property is indirect, the automatic stay's protections against foreclosure of the Property are similarly indirect and therefore attenuated, and the outcome will determine whether title will revest in the probate estate's administrator, rather than in the Debtor. The administrator is a fiduciary tasked with administering the Property. A decision not to validate the foreclosure would result in placing ownership of the Property with an administrator who presumably found little benefit in the Property for the probate estate.

Given the Debtor's failures and other factors weighing against her including the consequences to a third party, the Court annuls the stay.

## IV.    Conclusion

For the foregoing reasons, the Court grants the Motion, will annul the automatic stay, and grant retroactive relief to Wells Fargo to validate the August 6, 2024, foreclosure sale of the Property. The Court will enter a separate order consistent with this opinion.

**END OF DOCUMENT**